IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEVIN E.,[1]

          Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____

**Case No. 6:25-cv-01044-AP**

**OPINION AND ORDER**

**POTTER, United States Magistrate Judge**:

Plaintiff Devin E. brings this action for judicial review of a final decision of the

Commissioner of Social Security denying his application for disability insurance benefits (DIB)

and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This

Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Commissioner erred when (1) the ALJ failed to provide clear and

convincing reasons for rejecting Plaintiff's subjective symptom testimony, (2) the ALJ found the

medical opinion of consultive examiner Raymond Nolan, M.D., Ph.D. only partly persuasive,

and (3) the Appeals Council did not exhibit a letter from Ian Coe, M.D. Pl.'s Br., ECF No. 13.

For the reasons outlined below, the Commissioner's decision is AFFIRMED.

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case and any immediate family members of that
party.

1 – OPINION AND ORDER

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for DIB and SSI on September 20, 2021, alleging disability since January 1, 2020. Tr. 67, 234. The claims were denied initially and upon reconsideration. Tr. 77, 89, 98, 105. Plaintiff requested a hearing before an ALJ and appeared before the Honorable Jason Crowell on March 6, 2024. Tr. 44–66. ALJ Crowell sought additional testimony from a vocational expert and Plaintiff appeared at another hearing on July 10, 2024. Tr. 31–43. In a written decision dated July 18, 2024, ALJ Crowell determined that Plaintiff was not disabled under the Social Security Act. Tr. 19–26. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 1. Plaintiff now seeks judicial review.

Plaintiff was 57 years old on his alleged onset of disability date. Tr. 67. He alleges disability due to psoriasis and arthritis in both hands. Tr. 68. Plaintiff has his GED and no relevant prior work experience. Tr. 25.

**STANDARD OF REVIEW**

When reviewing the decision of the ALJ, district courts view questions of law de novo. *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025). But when there is no legal error, the denial of benefits will only be overturned if the ALJ's decision "is not supported by substantial evidence." *Id.* (internal quotation and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). This is not a high bar; substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court may not substitute its judgment for that of the ALJ when the evidence could

support either affirming or reversing the ALJ's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

### DISCUSSION

A person is disabled when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining if someone seeking benefits is disabled, the ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). If at any point in the five-step process the ALJ determines that the person is or is not disabled, the process stops. *Id.*; *see also Woods v. Kijakazi,* 32 F.4th 785, 787 n.1 (9th Cir. 2022).

The first step looks at whether the claimant is doing "substantial gainful [work] activity;" if they are, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The second step focuses on the claimant's physical or medical impairment; a claimant is not disabled unless they can show a severe impairment that lasts at least a year or is expected to result in death. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ asks whether the severity of the impairment meets or equals one of the impairments listed by the Commissioner of Social Security. *Id.* § 404.1520(a)(4)(iii). If the impairment is equivalent to one of the listed impairments, the claimant is presumptively disabled. *Id.* If not, the ALJ proceeds to the fourth step. *Id.* § 404.1520(a)(4)(iv). Prior to proceeding to steps four and five, the ALJ must determine the residual function capacity. *Id.* § 404.1520(e). This analysis determines what a claimant can do on a sustained basis despite their limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). Then, the fourth

step requires an analysis of the claimant's part work and residual functioning; if the claimant can still do their past relevant work, they are not disabled. *Id.* § 404.1520(a)(4)(iv). At the fifth step, the question is whether given the claimant's present abilities, there is another type of job they can do; if the claimant can do another job, they are not disabled. *Id.* § 404.1520(a)(4)(v).

Here, the ALJ determined that Plaintiff satisfied the first two steps of the analysis. Tr. 21–22. At step three, though, the ALJ determined that his impairment did not meet or equal one of the impairments listed by the Commissioner. Tr. 22. The ALJ then conducted the RFC assessment and determined that Plaintiff could perform medium work except he could "never reach overhead with the non-dominant left upper extremity and [could only] frequently handle and finger bilaterally." Tr. 22. Plaintiff has no relevant past work, but the ALJ determined, with the aid of testimony from the vocational expert, that Plaintiff could perform work as a janitor (750,000 jobs in the national economy), a laundry worker (20,000 jobs in the national economy), and an automobile detailer[2] (167,000 jobs in the national economy).

Plaintiff requested review from the Appeals Council and offered as additional evidence a letter from Dr. Coe, his primary care physician. The Appeals Council did not exhibit the new evidence and declined the request for review.

Plaintiff takes issue with how the ALJ analyzed his own subjective testimony and the testimony of his providers when making the RFC assessment as well as with the Appeals Council's decision not to exhibit the letter from Dr. Coe.

---

[2] The ALJ's opinion here contains a typo and lists "automobile dealer" instead of "automobile detailer." The DOT number the ALJ provided, 915.687-034, refers to an automobile detailer, consistent with the vocational expert's testimony at the July 2024 hearing.

4 – OPINION AND ORDER

I.      **Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Pl.'s Br. 2–7.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If this first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ then must determine the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (emphasis added) (internal quotation and citation omitted). Specific, clear and convincing reasons are those which "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In his 2021 function report, Plaintiff stated that his hands hurt 24/7. Tr. 288. He reported that gripping was painful and that he frequently dropped things. Tr. 288. He reported that he could no longer do "any kind of hard work requiring serious gripping." Tr. 289. In March 2022, he updated his report, stating that he was experiencing more pain throughout his hands. Tr. 296. In March 2024, Plaintiff testified that due to his osteoarthritis and rotator cuff injury, he is no

5 – OPINION AND ORDER

longer able to work. Tr. 51. He testified that he cannot clench his fingers or fist and cannot twist a doorknob. Tr. 56. He testified that he frequently drops things because of the pain. Tr. 56. He testified that he can bring in a bucket of pellets for his wood pellet stove, but cannot do any more than that because if he overdoes it, he is in pain for a week. Tr. 56. Plaintiff testified that he controls the pain with ibuprofen and acetaminophen, as well as topical creams. Tr. 57. Plaintiff has also received cortisone shots. Tr. 57. Plaintiff testified that with the cortisone shots he was "pretty pain free" for a month or two. Tr. 57. In July 2024, Plaintiff testified that his hands had gotten worse. Tr. 37. He testified that he had to quit using a five-gallon jug to carry water and now, could only carry a two-gallon jug. Tr. 38.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. The ALJ noted that Plaintiff "has continued to receive good relief from treatment." Tr. 24. The ALJ also found Plaintiff's alleged degree of limitation inconsistent with his activities of daily living, specifically in how he continued to use his hands extensively. Tr. 24.

Improvement with treatment can be a clear and convincing reason to discount subjective symptom testimony. But the ALJ may not isolate a few instances of improvement in the medical record as a basis for rejecting symptom testimony. *Garrison*, 759 F.3d at 1017. Plaintiff argues that "[n]o evidence shows that Plaintiff continued to receive good relief from treatment." Pl.'s Br. 5. However, the ALJ's finding here is supported by substantial evidence.

As the ALJ noted, Plaintiff was discharged from occupational therapy in August 2022; at that time, he had met several of his goals, including pain free active range of motion and

6 – OPINION AND ORDER

increased strength. Tr. 23 (citing Tr. 483). Further, the record shows that cortisone injections were providing Plaintiff with good relief. Tr. 23. Although Plaintiff testified that relief from the cortisone injections only lasted a month or two, provider notes indicate that the relief lasted longer than that. In October of 2022, after receiving a steroid injection in June, Plaintiff reported to his provider that he "gets significant relief" from the injections and that they were just starting to wear off. Tr. 560. In June 2023, his provider offered to do another round of injections, but Plaintiff said that his symptoms were not "bad enough" and that he "[could] live with it for a little bit longer." Tr. 526. The provider noted that the injections to his shoulder and hand "seemed to work for a good 6 months or so." Tr. 526.

A plaintiff's activities of daily living can undermine a claim of debilitating symptoms when the activities either "meet the threshold for transferable work skills" or contradict the plaintiff's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ found that Plaintiff's activities contradicted his testimony. Tr. 23–24. Although Plaintiff testified that he was very limited in the use of his hands, the ALJ pointed to multiple places in the record where Plaintiff "is often noted to be using his hands extensively years after the alleged onset date." Tr. 24.

In his function reports, while Plaintiff reported that he can no longer do "any kind of hand work requiring serious gripping," he also reported that he did significant yard work, including raking, using a riding lawn mower, and leaf blowing. Tr. 289, 290. He reported that he spent "maybe half [his] day" on yard work and household repairs. Tr. 290. In another function report, Plaintiff stated that he would spend a couple hours, twice a week, on yard work, including mowing the lawn, leaf blowing, and pruning. Tr. 314.

7 – OPINION AND ORDER

In a May 2022 appointment to discuss surgical options, Plaintiff's provider noted that "[t]his patient still does heavy activity and heavy use with his hands so he may fall into the fusion treatment plan." Tr. 462. Similarly, in August 2022, when he was discharged from occupational therapy, the discharge notes state that the goal of a home exercise program (HEP) was discontinued because Plaintiff "has struggled to be consistent with HEP recommendations, as he is constantly working with his hands." Tr. 483.

The ALJ provided clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

## II.    Medical Opinions of Dr. Raymond Nolan

Plaintiff argues that the ALJ also erred by finding only partly persuasive the opinion of consultive examiner, Dr. Nolan. Pl.'s Br. 7–11.

When evaluating medical evidence, the ALJ must look at the persuasiveness of the medical opinion with a focus on the "'supportability' and 'consistency'" of the findings. *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Id.* at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Nolan performed a consultive exam in January 2022. Tr. 445–47. In examining Plaintiff's hands, Dr. Nolan found that Plaintiff was able to make a full fist. Tr. 446. Plaintiff's finger range of motion was within normal limits with the exception of his thumbs, which had "a modest limitation of flexion capability." Tr. 446. Plaintiff also had "bilateral CMC

8 – OPINION AND ORDER

[carpometacarpal] tenderness to joint palpation." Tr. 446. A pinch test showed normal strength bilaterally. Tr. 446. Plaintiff was able to manipulate items without difficulty. Tr. 446. Dr. Nolan opined that "repetitive hand activity should be limited to occasional basis." Tr. 447. He opined that Plaintiff had no restrictions "on duration of sitting, standing or walking, lifting or carrying or use of upper or lower extremities." Tr. 447.

The ALJ found Dr. Nolan's opinion to be partly persuasive. Tr. 25. The ALJ found that the opinion was "supported with some explanation and observations in this exam." Tr. 25. However, the ALJ reasoned that Dr. Nolan's own examination findings "would indicate greater than occasional capacity for repetitive hand activity." Tr. 25. The ALJ also found that Dr. Nolan's opinion was somewhat inconsistent with "the medical evidence of record overall, including improvement in occupational therapy records and thumb injections." Tr. 25. As discussed above, Plaintiff's symptoms improved with both occupational therapy and cortisone injections. The ALJ properly considered the supportability and consistency of Dr. Nolan's opinion and found it partly persuasive. The ALJ's findings here are supported by substantial evidence.

## III.    The Appeals Council and Dr. Coe's Letter

Finally, Plaintiff argues that the Appeals Council erred when they declined to exhibit Dr. Coe's letter. Pl.'s Br. 12.

When seeking review from the Appeals Council, a claimant may submit new evidence. The Appeals Council will review a case when they receive "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a

reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

Here, Plaintiff submitted a one paragraph letter from Dr. Coe, Plaintiff's primary care physician. Tr. 10. Dr. Coe opined that Plaintiff's "severe arthritis of his left shoulder, left shoulder rotator cuff tendinitis, and severe arthritis of both thumbs . . . would prevent him from effectively completing a multitude of tasks that would be required for most employment involving physical labor or movement of the upper extremities." Tr. 10. He opined that Plaintiff "is unable to grasp for extended periods of time, his grip strength is limited, he cannot lift his arms above horizontal without significant pain, he is unable to reach behind his back and cannot lift more than 10 pounds." Tr. 10.

The Appeals Council did not exhibit the evidence, finding that it "does not show a reasonable probability that it would change the outcome of this decision." Tr. 2. Plaintiff argues that "if accepted, the letter from Dr. Coe would change the outcome of the decision." Pl.'s Br. 12. Plaintiff asks this Court to assign error to the Appeals Council's decision not to review his case. Pl.'s Br. 12. However, this Court "do[es] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).

Although the Court does not have jurisdiction to review the Appeals Council's decision, any additional evidence still becomes part of the administrative record that is reviewed by this Court. *Id.* at 1159–60.

10 – OPINION AND ORDER

Dr. Coe's opinion that Plaintiff cannot perform work activities is "inherently neither valuable nor persuasive" because that is an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Dr. Coe's opinion is also inconsistent with Plaintiff's testimony and the objective medical evidence. Although Dr. Coe opined that Plaintiff cannot carry more than ten pounds at a time, the record demonstrates that Plaintiff regularly carried twice that. *See* Tr. 523 (In December 2023, Plaintiff only recently had to start carrying half bags of wood pellets—20 pounds—instead of full bags—40 pounds.); Tr. 38 (In July 2024, Plaintiff testified that he started carrying a two-gallon jug of water—16 pounds—instead of a five-gallon jug—40 pounds.). And while Dr. Coe opined that Plaintiff's grip strength is limited, Dr. Nolan's examination found that Plaintiff had normal strength. Tr. 446. Finally, Dr. Coe opined that Plaintiff cannot grasp for extended periods of time, but Plaintiff reports that he is still able to rake, use a leaf blower, prune plants, and perform car and household repairs. Tr. 290, 314.

The Court has reviewed Dr. Coe's letter and finds that the ALJ's opinion is still supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 31st day of March, 2026.

 /s/Amy E. Potter            
Amy E. Potter
United States Magistrate Judge

11 – OPINION AND ORDER